**WO**                                                                                                          SC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Anthony Garcia, Sr., ) | No. CV 12-1717-PHX-JAT (MHB) |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Daniel Reber, et al., ) | |
| Defendants. ) | |

Plaintiff Robert Anthony Garcia, Sr., who is confined in the Arizona State Prison Complex, Mohave Unit, in Douglas, Arizona, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983, which the Court dismissed for failure to state a claim with leave to amend. (Doc. 1, 7.) Plaintiff filed a First Amended Complaint, which the Court dismissed based on Plaintiff's failure to comply with the Instructions for completing the court-approved form, among other issues. (Doc. 12, 17.) Plaintiff has filed a Second Amended Complaint. (Doc. 19.) Plaintiff has again failed to comply with the Instructions for completing the form, as discussed below, despite the dismissal of his First Amended Complaint for the same failure. The Second Amended Complaint is also frequently illegible, fanciful or fantastic, and fails to state a claim. The Court will dismiss the Second Amended Complaint and this action.

**I.      Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised

claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).

## II.     Second Amended Complaint

Plaintiff ostensibly alleges eight counts. Plaintiff sues the following Defendants: Glendale Police Officers Daniel Reber, Rodrigo Veneracion, Robert Anselmo, Glenn Koehler, Nicholas Magley, Mark Schilling, Eric Brown, Eric Rouse, Donald Labrant, and Adam Yattes; civilian Victor Nobel Hernandez; Maricopa County Superior Court Judges

1  Cynthia J. Bailey, Christina McHolgon, Michael Hintz, Robert Gottfried; and Steve Lynch;
2  Deputy Maricopa County Attorneys Jerry Hamant, Lisa Austien, James Howard Rolstead;
3  and criminal defense attorneys Amanda C. Martin, Justin Beresky, Michael Todd Glover, and
4  Jennifer Rock[1]; Maricopa County Superior Court; Maricopa County Correctional Health
5  Service; Maricopa County Fourth Avenue Jail Sheriff Department; and the Glendale City
6  Prosecutor's Attorney Office.  Plaintiff does not indicate the relief he seeks.

**Background**

Most of the individuals sued by Plaintiff in his Second Amended Complaint were in some way involved in two criminal cases brought against him in Maricopa County Superior Court. Plaintiff was charged in case# CR2010-157605[2] with aggravated assault and resisting arrest, occurring on October 27, 2010.[3] Plaintiff was charged in case# CR2011-145947 with a dangerous drug violation, occurring on September 2, 2011.[4] On July 12, 2012, after a six-day jury trial presided over by Judge Gottfried in CR2010-157605, Plaintiff was convicted of two counts of the lesser-included offense of disorderly conduct and one count of resisting arrest.[5] On July 16, 2012, Plaintiff pleaded guilty to possession or use of dangerous drugs pursuant to a plea agreement in case CR2011-145947 before Commissioner Lynch. Plaintiff represented himself in both cases with the assistance of advisory defense attorney Michael

---

[1] See http://www.azbar.org/ (last visited Aug. 8, 2013).

[2] See http://www.courtminutes.maricopa.gov/docs/Criminal/012012/m5080860.pdf (last visited May 22, 2013).

[3] See http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2010-157605 (last visited Aug. 8, 2013).

[4] See http://www.superiorcourt.maricopa.gov/docket/CriminalCourtCases/caseInfo.asp?caseNumber=CR2011-145947 (last visited Aug. 8, 2013).

[5] See http://www.courtminutes.maricopa.gov/docs/Criminal/072012/m5329436.pdf (last visited Aug. 8, 2013).

1  Todd Glover.[6] Deputy Maricopa County Attorney Lisa Austien prosecuted both cases.[7] On
2  August 30, 2012, Plaintiff was sentenced to eight years in prison in CR2011-145947[8] and
3  3.75 years in prison in CR2010-157605 to run concurrently with the sentence in CR2011-
4  145947.[9] Earlier in the above criminal cases, Maricopa County Superior Court Judge Hintze
5  presided over competency hearings.[10] Defendant Reber testified at Plaintiff's trial in
6  CR2010-157605.[11]

## III.   Failure to Comply with Instructions and Rules

Local Rule 3.4(a) requires prisoners to use court-approved form complaints. Although Plaintiff used the court-approved form complaint, he again failed to substantially comply with the Instructions and rules for completing his Second Amended Complaint.

This District's court-approved form complaint, which prisoners are required to use pursuant to Local Rule 3.4(a), requires that each defendant be clearly identified, including name, position, and location where the defendant works or worked at times relevant to claims against the defendant. Further, the Instructions for completing the court-approved form complaint specifically provide that:

> **Local Rule of Civil Procedure (LRCiv) 3.4 provides that complaints by incarcerated persons must be filed on the court-approved form.** The form *must be typed or neatly handwritten*. The form must be completely filled in

---

[6] See http://www.courtminutes.maricopa.gov/docs/Criminal/072012/m5330645.pdf (last visited Aug. 8, 2013).

[7] See http://www.courtminutes.maricopa.gov/docs/Criminal/072012/m5330645.pdf (last visited Aug. 8, 2013).

[8] See http://www.courtminutes.maricopa.gov/docs/Criminal/092012/m5405609.pdf (last visited Aug. 8, 2014).

[9] See http://www.courtminutes.maricopa.gov/docs/Criminal/092012/m5405617.pdf (last visited Aug. 8, 2013).

[10] See http://www.courtminutes.maricopa.gov/docs/Criminal/052012/m5228225.pdf (last visited Aug. 8, 2013).

[11] See http://www.courtminutes.maricopa.gov/docs/Criminal/072012/m5323631.pdf (last visited Aug. 8, 2013).

> to the extent applicable. All questions must be answered *clearly and concisely* in the appropriate space on the form. If needed, you may attach additional pages, ***but no more than fifteen additional pages***, of standard letter-sized paper. You must identify which part of the complaint is being continued and number all pages. If you do not fill out the form properly, you will be asked to submit additional or corrected information, which may delay the processing of your action. You do not need to cite law.

(Instructions at ¶ 1) (italics added).

While Plaintiff used the court-approved form complaint and ostensibly complied with the page limitation, his Second Amended Complaint is only partially legible. Further, Plaintiff again asserts claims against entities that may not be sued under § 1983, such as courts, or persons who either did not act under color of state law, such as criminal defense counsel, or who are immune for their actions in Plaintiff's criminal cases, such as Maricopa County Superior Court judges and commissioners and Deputy Maricopa County Attorneys.[12] Plaintiff also fails to comply with the requirement that he allege only one claim per count and to designate the type of claim he asserts in each count. Instead, Plaintiff asserts several claims in each count and his allegations are rambling, confused, and frequently non-sensical or fantastic.

## IV.   Failure to State a Claim

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Outlander, 879 F.2d 583, 587 (9th Cir. 1989). Negligence is not sufficient to state a claim under § 1983. Daniels v. Williams, 474 U.S. 327, 330-31 (1986). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

---

[12] Plaintiff should refer to the Court's prior Order, which explained that certain entities can not be sued under § 1983, that criminal defense attorneys do not act under color of law within the meaning of § 1983, and that judges and prosecutors are entitled to immunity for their judicial acts under § 1983.

- 5 -

### A. Count I

Plaintiff designates Count I as a claim for use of excessive force during his arrest on October 27, 2010. A claim that police officers used excessive force in the course of an arrest arises under the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 395 (1989); Hooper v. County of San Diego, 629 F.3d 1127, 1133 (9th Cir. 2011); Bryan v. MacPherson, 630 F.3d 805, 823-24 (9th Cir. 2010). To state an excessive force claim, a plaintiff must allege facts to support that the force used by police officers was objectively unreasonable under the circumstances. Graham, 490 U.S. at 395. The pertinent question is whether the use of force was "objectively reasonable in light of the facts and circumstances confronting [the officers], without regard to their underlying intent or motivation." Id. at 397. Further, an arrestee's resistance may support the use of force regardless of whether of probable cause for an arrest exists, although the existence of probable cause may be considered as a part of the totality of the circumstances. Brooks v. City of Seattle, 599 F.3d 1018, 1022 (9th Cir. 2010). Other relevant circumstances include the severity of the suspected crime at issue, whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest. Miller v. Clark County, 340 F.3d 959, 964 (9th Cir. 2003); see Bryan, 630 F.3d at 823-24.

Plaintiff alleges that Defendants Reber and/or Veneracion used a taser on him in the course of arresting him on October 27, 2010 at the home of Plaintiff's parents. Defendants Schilling, Rouse, Solomon, Magley, and Koehler were at the scene at some point during the events. As noted above, Plaintiff was indicated by the grand jury, establishing the existence of probable cause, and he was subsequently convicted of disorderly conduct, resisting arrest, and unlawful flight by a jury in connection with those events.

In Count I, Plaintiff seeks to litigate facts at issue at his criminal trial concerning his arrest. A civil rights claim brought pursuant to § 1983 that, if successful, would necessarily undermine the validity of a conviction or the duration of a sentence may not be brought before the prisoner has obtained a "favorable termination" of the underlying conviction; a prisoner's *sole* federal remedy to challenge the validity or duration of his confinement is a

1 petition for a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Docken
2 v. Chase, 393 F.3d 1024, 1031 (9th Cir. 2004). That is, a civil rights claim under § 1983
3 *does not accrue* unless or until the prisoner has obtained a "favorable termination" of the
4 underlying conviction. See Heck, 512 U.S. at 489; Docken, 393 F.3d at 1031. Under the
5 "favorable termination" rule:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by action whose unlawfulness would render a conviction of sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus . . .

10 Heck, 512 U.S. at 486-87. Without such a showing of a "favorable termination," a person's
11 cause of action under § 1983 has not yet accrued. Id. at 489. Thus, success on any claim
12 pursuant to § 1983 that would necessarily imply the invalidity of confinement, or its duration,
13 does not accrue "and may not be brought" unless and until the underlying conviction,
14 sentence or parole decision is reversed. Only then may a plaintiff properly seek relief
15 pursuant to 42 U.S.C. § 1983.

16 Plaintiff asserts that officers used excessive force during the course of his arrest. As
17 stated above, Plaintiff was convicted of resisting arrest, but he seeks to litigate the facts
18 concerning whether he resisted arrest. Because success on that claim in this action would
19 necessarily imply the invalidity of Plaintiff's conviction, that claim will not accrue unless or
20 until Plaintiff's conviction for resisting arrest and disorderly conduct are reversed.
21 Accordingly, Count I will be dismissed pursuant to Heck. Plaintiff must obtain a favorable
22 termination of that conviction, either on direct appeal or post-conviction review in state court
23 or habeas review in federal court, before he may seek relief under § 1983 on that claim.

24 **B.     Count II**

25 In Count II, Plaintiff complains about alleged inaccuracies regarding medical
26 treatment following his arrest, documentation of his injuries, and the loss of a hospital-made
27 CD containing Plaintiff's x-rays and medical reports following treatment by the hospital.

1  Plaintiff asserts that the CD was retaliatory.[13]

2  To state a viable claim for First Amendment retaliation, a plaintiff must allege facts
3  to support that: (1) a state actor took some adverse action against him (2) because of (3) his
4  protected conduct, and that such action (4) chilled the plaintiff's exercise of his First
5  Amendment rights (or that the plaintiff suffered more than minimal harm) and (5) did not
6  reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-
7  68 (9th Cir. 2005); see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation
8  claims requires an inmate to show (1) that the prison official acted in retaliation for the
9  exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate
10 penological interest"). The plaintiff has the burden of demonstrating that his exercise of his
11 First Amendment rights was a substantial or motivating factor behind the defendants'
12 conduct. Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977);
13 Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).

14  Plaintiff complains of the loss of a CD with his medical records, but he wholly fails
15 to allege facts to support that any Defendant caused the CD to disappear in retaliation for any
16 constitutionally-protected conduct of Plaintiff. Indeed, Plaintiff fails to allege facts to
17 support that the loss was anything other than negligent, which is not sufficient to state a
18 claim. Nor has Plaintiff alleged facts to support that the alleged retaliation chilled the
19 exercise of Plaintiff's First Amendment rights or caused more than minimal harm.
20 Accordingly, Plaintiff fails to state a claim for retaliation.

21  **C.   Count III**

22  In Count III, Plaintiff complains of two stops by Defendants Yattes and Labrant on
23 September 2 or 3, 2012, and on November 17, 2012, while Plaintiff was free on bond. In the
24 first incident, Labrant and Yattes saw Plaintiff near a convenience store and asked him for
25 identification. Plaintiff presented a bank card with his name on it. Labrant gave Yattes
26 Plaintiff's information. The officers "ran" Plaintiff's name; Plaintiff asked them for his bank

27
28  [13] Plaintiff has previously asserted claims concerning the loss of the CD in other actions filed by him.

- 8 -

1 card back. One of the officers asked how they knew that Plaintiff was the person identified
2 on the card and put the card in his pocket. Plaintiff was booked at the police station, but his
3 bank card was not entered into his property or returned to him. Plaintiff filed a grievance and
4 received a response that the bank card was not his property. According to Plaintiff, the
5 officers falsely reported that Plaintiff had attempted to hide from them and that they stopped
6 him because he was standing under a no trespassing sign.

7 In the second incident, Plaintiff's left shoulder was still recovering from injuries
8 received during his October 27, 2010 arrest. Yattes and Labrant stopped Plaintiff and
9 Labrant yelled at him to take his hand out of his pocket, then reached for Plaintiff's left arm
10 and pinned it behind his back, which caused Plaintiff pain. Labrant saw marks left from
11 being tazed on October 27, 2010 and told Plaintiff that he had heard what happened. Labrant
12 checked to see if there were any outstanding holds on Plaintiff and then let him go.

13 Plaintiff contends that both stops were made for the purpose of harassing him and that
14 he was denied of property without due process. To the extent that Plaintiff asserts that the
15 stops constituted harassment, he fails to state a constitutional violation. He also fails to
16 allege facts to state a Fourth Amendment violation. The Fourth Amendment provides that,
17 "The right of the people to be secure in their persons, houses, papers, and effects, against
18 unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but
19 upon probable cause . . . ." U.S. Const. amend. IV. However, in Terry, the Supreme Court
20 held that police officers could "'stop and frisk'" individuals where there was "'reason to
21 believe'" that the individual was "'armed and dangerous'" despite the absence of "probable
22 cause to arrest the individual for [a] crime.'" See Price v. Sery, 513 U.S. 962, 968 (9th Cir.
23 2008) (quoting Terry, 392 U.S. at 27). "The Terry Court made clear that the touchstone of
24 the reasonableness inquiry was not the subjective strength of the officer's belief, but its
25 grounding in the objective facts: '[I]n determining whether the officer acted reasonably in
26 such circumstances, due weight must be given, not to his inchoate and unparticularized
27 suspicion or hunch, but to the specific inferences which he is entitled to draw from the facts
28 in light of his experience.'" Id. (quoting Terry, 392 U.S. at 27) (internal quotation marks

- 9 -

1  omitted). While Plaintiff considered the two stops harassing, he acknowledges that he was
2  booked after one and he fails to allege facts to support that either stop exceeded the limits
3  under Terry. Accordingly, Plaintiff fails to state a claim on this basis.

4        Plaintiff also fails to state a claim based on deprivation of property. In Parratt v.
5  Taylor, 451 U.S. 527, 541 (1981), the Supreme Court held that due process is not violated
6  when a state employee negligently deprives an individual of property, as long as the state
7  makes available a meaningful post-deprivation remedy. The rationale underlying Parratt is
8  that *pre*-deprivation procedures are impractical when the deprivation of property occurs
9  through negligent conduct of a state employee because a state cannot know when such
10 deprivations will occur. Hudson v. Palmer, 468 U.S. 517, 533 (1984). "Where a government
11 official's act causing injury to life, liberty, or property is merely negligent, 'no procedure for
12 compensation is *constitutionally* required.'" Daniels, 474 U.S. at 333 (emphasis added)
13 (quoting Parratt, 451 U.S. at 548).

14       The logic of Parratt has been extended to intentional unauthorized deprivations of
15 property by state actors because a state also cannot know when such deprivations will occur.
16 Hudson, 468 U.S. at 533. As with negligent deprivations, where a state makes available a
17 meaningful *post*-deprivation remedy, such as a common-law tort suit against a prison
18 employee for intentional unauthorized deprivations, a federal due process claim is precluded.
19 Hudson, 468 U.S. at 534-35; King v. Massarweh, 782 F.2d 825, 826 (9th Cir. 1986).

20       Plaintiff asserts that Labrant and Yattes deprived him of his bank card. Under Arizona
21 state law, Plaintiff has an available post-deprivation remedy via an action for conversion.
22 See Howland v. State, 818 P.2d 1169, 1172-73 (Ariz. Ct. App. 1991) (prison officials'
23 confiscation of and failure to return prisoner's personal property states a state law claim for
24 conversion); see also Wright v. Riveland, 219 F.3d 905, 918 (9th Cir. 2000) (prisoners in
25 Washington have adequate post-deprivation remedies to challenge deductions from inmate
26 accounts by utilizing the prison grievance procedure or by filing a state tort action). Because
27 Plaintiff has an available state law remedy for the claimed deprivation, he fails to state a
28 claim for violation of due process.

### D.    Counts IV, V, VI, and VIII

In Counts IV-VIII, Plaintiff makes a plethora of assertions complaining of acts by various Defendants in his state court criminal cases with which he disagreed or which he characterizes as trickery or manipulation. For example, in Count IV, he complains that a state court judge considered ordering a Rule 11 competency evaluation of him shortly after Plaintiff had been found to be competent. He faults the court for conferring with the prosecutor and his attorney regarding how to proceed. Plaintiff also asserts that various state court rules were violated and repeatedly asserts that various Defendants engaged in harassment, conflicts of interest, failed to do what he wanted them to do or failed to listen to him, and violated judicial and ethical codes of conduct, and the like. Plaintiff also includes citations to Bible verses, evil, and religion. Plaintiff also complains that one Defendant lied about his relationship with one of Plaintiff's daughters by stating that he was a god parent when he was not.

Plaintiff's allegations in Counts IV to VIII are vague and conclusory, to the extent that they are even legible. Although *pro se* pleadings are liberally construed, <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. <u>Ivey v. Bd of Regents of the Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. <u>Id.</u>

Moreover, Plaintiff fails to allege facts to support that any Defendant violated one or more of his constitutional rights. Rather, Plaintiff espouses his disagreement with various aspects of his state court proceedings, primarily against the judges or attorneys who appeared in those actions. As noted above and in prior orders, judges are entitled to absolute judicial immunity for acts taken in their judicial capacity, prosecutors are entitled to prosecutorial immunity for acts in prosecuting a case, and criminal defense attorneys do not act under color of state law. For all of these reasons, Plaintiff fails to state a claim in Counts IV to VIII and they will be dismissed.

**V.     Dismissal without Leave to Amend**

Because Plaintiff has failed to state a claim in his Second Amended Complaint, the Court will dismiss his Second Amended Complaint. "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir. 1996). Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend. Moore, 885 F.2d at 538.

Plaintiff has made three efforts at crafting a viable complaint and appears unable to do so despite specific instructions from the Court. The Court finds that further opportunities to amend would be futile. Therefore, the Court, in its discretion, will dismiss Plaintiff's Second Amended Complaint without leave to amend.

**IT IS ORDERED:**

(1) Plaintiff's Second Amended Complaint (Doc. 19) and this action are **dismissed** for failure to state a claim, and the Clerk of Court must enter judgment accordingly.

(2) The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

(3) The docket shall reflect that the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that any appeal of this decision would not be taken in good faith.

DATED this 13th day of August, 2013.

_____
James A. Teilborg
Senior United States District Judge